UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **NATIONWIDE PROPERTY & CASUALTY INSURANCE CO.,** | § § § § | |
| **Plaintiff,** | § § | **Case No. 5:21-cv-1131-LCB** |
| v. | § § | |
| **JEREMIAH LONG, Rochelle Long, J.L., J.L., J.L., Doris Bond, James Bond, and Charles Hopkins,** | § § § § § | |
| **Defendants.** | § | |

# OPINION

Before the Court in this declaratory judgment action[1] is Nationwide's motion for judgment on the pleadings.[2] Nationwide contends that it owes no duty to defend or indemnify Doris Bond[3] with respect to an underlying state-court action arising from a June 2021 vehicular collision. For the forthcoming reasons, the motion is due to be granted in part and denied in part.

## I.    BACKGROUND

The following facts are undisputed.[4]

---

[1] Nationwide seeks relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*
[2] Doc. 42.
[3] Nationwide also requests similar relief with respect to Mr. James Bond and Mr. Charles Hopkins. Those issues are squarely addressed in an opinion, entered contemporaneously herewith, on Nationwide's motion (Doc. 49) for default judgment.
[4] "Defendant adopts and incorporates by reference the factual and procedural background set forth in Plaintiff's Motion for Judgment on the Pleadings." Doc. 44 at 1 n.1.

A.      **The Policy**

In March 2021, Nationwide Property & Casualty Insurance Co. issued to Ms. Doris Bond an automobile-insurance policy.[5] Its effective dates were March 19, 2021 to September 19, 2021.[6] Ms. Bond was the sole named insured, and her 2014 Nissan Frontier S ("the Vehicle") was the only covered vehicle.[7] By way of coverage, the Policy bound Nationwide to "pay damages . . . for which any 'insured' becomes legally responsible because of an auto accident" and to "settle or defend . . . any claim or suit asking for these damages."[8] That provision additionally provided that Nationwide would have no duty to defend Ms. Bond on any claim beyond the scope of coverage.[9]

Incorporated within the Policy was Ms. Bond's signed "Authorization To Exclude A Driver."[10] Through that Authorization, Ms. Bond and Nationwide agreed

---

[5] Doc. 3-2 at 6. The Court relies upon the parties' written agreement (Docs. 3-2; 3-3) because its contents are central to the present determination and its authenticity is unquestioned. FED. R. CIV. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). Though the agreement was attached to the original complaint (Doc. 1) and Amended Complaint (Doc. 3), it was not attached to the latest complaint— Second Amended Complaint (Doc. 38). Nevertheless, Nationwide filed the Second Amended Complaint for reasons purely stylistic, namely to comport with this Court's confidentiality order. (*See* Docs. 37; 38 n.1.)
[6] Doc. 38 at 5 ¶ 19; Doc. 41 at 2 ¶ 19.
[7] Doc. 38 at 5 ¶ 19; Doc. 41 at 2 ¶ 19. The Vehicle's Vehicle Identification Number is 1N6AD0ER7EN722444; The Policy number is 7701J014719. Doc. 38 at 5 ¶ 19; Doc. 41 at 2 ¶ 19.
[8] Doc. 3-2 at 23.
[9] Doc. 3-2 at 24.
[10] Doc. 3-3 at 2. For the curious reader, the Court notes that the Policy, *supra* note 3, was a *renewed* (rather than originally issued) in March 2021. Doc. 38 at 5 ¶ 19; Doc. 41 at 2 ¶ 19. Ms. Bond signed the Authorization to exclude Mr. Bond in June 2019; as Ms. Bond admits, the Authorization—by its own terms—applied to the Policy as renewed in March 2021. Doc. 38 at 5 ¶ 20; Doc. 41 at 2 ¶ 20.

that Nationwide's duties to indemnify and defend would be altogether excluded while "JAMES BOND is operating any of the vehicles to which the policy applies."[11] The Policy's "Named Driver Exclusion Endorsement" relatedly provided the following: "With respect to all coverage under this policy, [Nationwide] will not pay damages, expenses, or loss arising out of the maintenance or use of any auto or trailer by the named excluded driver(s)."[12] In addition, the Policy's Declarations section clearly denoted Mr. Bond's status as an excluded driver.[13]

B. **The Accident**

On June 4, 2021—while the Policy was in effect—Mr. Bond was involved in a three-car accident while driving the Vehicle.[14] Mr. Bond veered into oncoming traffic, struck the vehicle of Charles Hopkins, and, a bit farther along, collided with a vehicle occupied by the Long family.[15] Thereafter, the Longs filed suit in the Circuit Court of Madison County, Alabama ("the underlying lawsuit"), through which they presently seek money damages for injuries sustained during the accident.[16] From Ms. Bond, the Longs seek damages on a theory of negligent

---

[11] Doc. 3-3 at 2 (emphasis in original).
[12] Doc. 3-2 at 51.
[13] Doc. 3-2 at 6.
[14] Doc. 38 at 6 ¶ 23; Doc. 41 at 2 ¶ 14.
[15] Doc. 38 at 6 ¶ 23; Doc. 41 at 2 ¶ 14.
[16] Doc. 38 at 4 ¶ 18; Doc. 41 at 2 ¶ 18.

entrustment, specifically for Ms. Bond's entrustment of the vehicle to an incompetent driver (Mr. Bond).[17]

Nationwide subsequently filed this lawsuit. In its motion for judgment on the pleadings, Nationwide argues that the Policy's "Named Driver Exclusion Endorsement" and "Authorization To Exclude A Driver" operate to absolve Nationwide of any duty to indemnify or defend Ms. Bond under the circumstances of the June 4 accident.[18]

## II. LEGAL STANDARD

Rule 12(c) of the Federal Rules of Civil Procedure permits a party to request judgment on the pleadings, which "is governed by the same standard as a motion to dismiss under Rule 12(b)(6)." *Carbone v. CNN, Inc.*, 910 F.3d 1345, 1350 (11th Cir. 2018). The analysis centers, in a word, on the "plausibility" of the nonmovant's position. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). If the nonmovant's opposition to judgment as a matter of law is plausible, then the motion is due to be denied. *Id.* at 570.

## III. DISCUSSION

Nationwide's request for a determination of its duty to indemnify Ms. Bond must be denied for want of judiciable ripeness. However, with respect to the issue

---

[17] As addressed in the Court's opinion on Nationwide's motion (Doc. 49) for default judgment, the Longs also seek damages from James Bond in the underlying lawsuit.
[18] Doc. 38.

of its duty to defend Ms. Bond in the underlying lawsuit, Nationwide has sufficiently demonstrated entitlement to judgment as a matter of law.

### A. The indemnification issue presents no judiciable controversy.

"Article III of the United States Constitution limits the jurisdiction of federal courts to cases and controversies of sufficient concreteness to evidence a ripeness for review." *Digital Props., Inc. v. City of Plantation*, 121 F.3d 586, 589 (11th Cir. 1997) (citing U.S. CONST. art. III, § 2, cl.1). A claim that "rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all" is not ripe for adjudication. *Texas v. United States*, 523 U.S. 296, 300 (1988) (internal quotation omitted). Thus, an insurer's request for declaratory relief on the issue of its duty to indemnify is not ripe for adjudication unless and until the underlying action is resolved. *Pa. Nat'l Mut. Cas. Ins. Co. v. Hethcoat & Davis, Inc.*, 339 F. Supp. 3d 1248, 1257 (N.D. Ala. 2017). The perils of a premature judgment on the issue are obvious: The plaintiff in the underlying suit could subsequently raise an additional theory or claim that brings injuries within the scope of coverage, or the insured could ultimately prevail in the underlying suit. *Id.* at 1258.

Here, no party alleges any facts indicating that the underlying lawsuit has resulted in a judgment. Thus, the question of Nationwide's duty to indemnify Ms. Bond is not sufficiently ripe to constitute a controversy suitable for this Court's

review; the Court is accordingly powerless to resolve Nationwide's request for declaratory relief thereon.

### B. The Policy's clear language excludes the duty to defend.

It is, however, "important to understand the difference between a claim that concerns the insurance company's duty to *defend* and a claim that concerns its duty to *indemnify* (*i.e.*, the duty of an insurer to pay a judgment against its insured)." *Hethcoat & Davis*, 339 F. Supp. 3d 1248, 1257 at 1256 (emphasis in original) (citing 16 Couch on Insurance 3d § 227:21). Because the broader duty to defend arises far earlier in time than does the duty to indemnify, "the duties must be analyzed separately." *Id.* (internal quotation omitted). And a request for declaratory judgment regarding an insurer's duty to provide a defense in an underlying lawsuit is ripe for review upon the underlying suit's filing. *See id.* at 1256–57 ("Federal courts in Alabama have repeatedly resolved the issue of an insurer's duty to defend based upon the pleadings, and prior to resolution of the underlying lawsuit."); *see also, e.g.*, *Hanover Ins. Co. v. Superior Lab. Servs., Inc.*, 179 F. Supp. 3d 656, 670 (E.D. La. 2016) ("Because the duty to defend does not depend on the outcome of the underlying law suit, a duty-to-defend claim is ripe when the underlying suit is filed.").

Alabama law controls the Policy.[19] And Alabama law's application thereto makes clear that Nationwide's entitlement to declaratory relief on the duty-to-defend issue cannot plausibly be contested.

As a threshold matter, the Court must determine what the Policy actually says. The task is, relatively speaking, not burdensome in this case.

Insurance policies are subject to governance by the same law applicable to contracts generally. *Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.*, 817 So.2d 687, 691 (Ala. 2001). And insurers are no less entitled than any other party to have their policies "enforced as written." *Id.* Through an objective lens, the trial court determines whether an insurance policy is ambiguous. *Id.* at 692. Where no ambiguity clouds the parties' intentions as manifested in the agreement, "the construction of the contract and its legal effect become questions of law for the court" as well. *Reeves Cedarhurst Dev. Corp. v. First Amfed Corp.*, 607 So.2d 184, 186 (Ala. 1992).

The Policy here could hardly be less ambiguous—in fact, there exists no dispute about the ordinary meaning of its terms. There persists only a question of Alabama law's application to thereto. *See infra* Part III(C). Nobody proffers

---

[19] The Court's jurisdiction over this dispute is grounded in the diversity statute, 28 U.S.C. § 1332. Thus, the Court must apply the law of Alabama to resolve this contractual dispute. *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1139 (11th Cir. 2005) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)); *see also Cherry, Bekaert & Holland v. Brown*, 582 So.2d 502, 506 (Ala. 1991) (describing Alabama choice-of-law rule applicable to contractual disputes).

competing interpretations of the signed Authorization's language (specifically, its exclusion of accidents that occur while Mr. Bond "is" driving the Vehicle). And all are in agreement that the dispute here concerns injuries alleged to have arisen from an accident that occurred during Mr. Bond's operation of the Vehicle on June 4, 2021.

The Policy's clear language excuses Nationwide from any duty to defend Ms. Bond in the underlying lawsuit, and the Court is bound to enforce the Policy's unambiguous terms. *E.g.*, *Johnson v. Allstate Ins. Co.*, 505 So.2d 362, 365 (Ala. 1987).

### C. The arguments in opposition fail as a matter of law.

Both Ms. Bond and the Longs oppose Nationwide's motion, but they assert distinct legal arguments. The Longs argue that, under Alabama law, the Policy's clear language requires Nationwide to defend Ms. Bond on their negligent-entrustment claim—namely, that the entrustment preceded Mr. Bond's operation of the Vehicle.[20] Ms. Bond, on the other hand, argues that despite the Policy's unambiguous terms, Nationwide should nevertheless be equitably estopped from refusing to defend her in the underlying lawsuit. Both arguments fail.

---

[20] Doc. 43.

i.      The Longs' Argument

The Policy excludes Nationwide's duty to defend claims for injuries arising "while James Bond **is** operating" the Vehicle.[21] That language, the Longs argue, cannot apply to exclude their suit for "the separate tort of negligent entrustment, committed by Ms. Bond, [which] occurred during a time period **before** James Bond operated the vehicle."[22] For two primary reasons, the Longs have failed to plausibly contest Nationwide's entitlement to declaratory relief on the duty-to-defend issue.

First and foremost, in an action for negligent entrustment of a vehicle, "negligent use by the one to whom it is entrusted is essential to recovery" under Alabama law. *Cooter v. State Farm Fire & Cas. Co.*, 344 So.2d 496, 499 (Ala. 1977) (per curiam) (applying homeowner-insurance provision excluding coverage for injuries arising from use of vehicle in negligent entrustment action against non-operator for such injuries). In other words, the negligence of the entrustor and the entrustee are "concurren[t] . . . dual elements." *Id.*; *see also Dutton v. State Farm Mut. Auto Ins. Co.*, 383 So.2d 519, 521 (Ala. 1980) (Jones, J., dissenting) (recalling that negligent entrustment and operation are "dual acts" under Alabama law).

Thus, the Longs cannot avoid the Policy's unambiguous terms by arguing that Ms. Bond handed the Vehicle over to Mr. Bond before he wrecked it. Alabama law

---

[21] Doc. 3-3 at 2 (emphasis added).
[22] Doc. 43 at 4 (emphasis in original).

forecloses their theory.[23] Any negligence in Ms. Bond's entrustment of the Vehicle is not so "separate," as the Longs allege, from Mr. Bond's operation thereof.

Second, in construing an insurance contract, "a court must examine more than an isolated sentence or term; it must read each phrase in the context of all other provisions." *Twin City Fire*, 817 So.2d at 691. So, *Cooter* aside, the Longs' isolated reading of one word within the signed Authorization ignores the context within which it was written. For example, the Named Driver Exclusion clearly states that Nationwide denies "all coverage" under the policy for claims "arising out of the . . . use of [the Vehicle] by the named excluded driver(s)."[24] The Court will not read one word—"is"—in isolation and without consideration of the instrument in its entirety.

### ii. Ms. Bond's Argument

The Court next turns to Ms. Bond's argument, which is likewise insufficient to cast plausible doubt upon Nationwide's entitlement to judgment as a matter of law on the duty-to-defend issue.

Ms. Bond alleges that despite the Policy's clear language, Nationwide should be estopped from denying her a defense because Nationwide requested that counsel

---

[23] *Cooter*, 344 So.2d at 499 (rejecting argument that "negligent entrustment of the vehicle, and not its use, is the basis of insured's alleged liability" because the argument "does not comport with the elements that make up this tort of negligent entrustment"). The principle makes good sense when one considers the alternative, which would permit recovery absent any showing that the entrustee-driver "actually caused the injury by his negligent use of the vehicle." *Id.*
[24] Doc. 3-2 at 51.

for the Longs allow Ms. Bond an additional 30 days to answer their complaint.[25] Nationwide's request, Ms. Bond alleges, amounts to an exercise of exclusive control over her defense and thus a waiver of Nationwide's contractual right to deny her a defense.[26] But the problem for Ms. Bond is that her argument rests upon a false premise.

"The doctrine of estoppel is said to be founded upon principles of equity, morality and justice." *Campbell Piping Contractors, Inc. v. Hess Pipeline Co.*, 342 So.2d 766, 770 (Ala. 1977). To that end, where "a liability insurer, *by assuming the defense of an action*, leads one to believe that liability to do so is not denied," the insurer may not subsequently withdraw from the defense on noncoverage grounds. *Id.* (emphasis added). The Alabama Supreme Court espoused that principle in *Campbell Piping*, *id.*, and stated it more succinctly a decade later: "[I]f an insurer *does, in fact, undertake to defend an insured* without reserving the right to withdraw its defense, it thereby waives the right to do so." *Burnham Shoes, Inc. v. W. Am. Ins. Co.*, 504 So.2d 238, 242 (Ala. 1987) (emphasis added) (answering Eleventh Circuit's certified question), *abrogated on other grounds by Williamson v. Indianapolis Life*

---

[25] Doc. 41 at 3 ¶ 3; Doc. 44 at 2.
[26] Ms. Bond also alleges, as a prerequisite to invocation of the equitable doctrine upon which she relies, that she detrimentally relied upon Nationwide's conduct—namely, in that she incurred a default judgment below. The Court need not address the argument because Nationwide never undertook her defense. *See infra*. But in any event, nothing in this case indicates that Ms. Bond was prejudiced by the default judgment entered against her in the underlying case. The Court can only assume that the default was set aside; otherwise, it would make little sense for the parties here to continue litigating Nationwide's duty to defend Ms. Bond below.

*Ins. Co.*, 741 So.2d 1057 (Ala. 1999); *see also Home Ins. Co. v. Reed Equip. Co.*, 381 So.2d 45 (Ala. 1980). Implicit in the Alabama Supreme Court's instruction has been, unwaveringly, the undertaking of the insured's defense as a prerequisite for invocation of the doctrine. *See Campbell Piping*, 342 So.2d at 770; *Burnham Shoes*, 504 So.2d at 241 (couching *Campbell Piping* within the context of "an insurer [attempting] to withdraw a defense already undertaken"); *Home Ins. Co. v. Rice*, 585 So.2d 859, 861 (Ala. 1991) (estopping insurer from denying defense "13 months after it had assumed that defense.").

As made clear by the Alabama Supreme Court's more-recent decision in *Canal Insurance Co. v. Old Republic Insurance Co.*, 718 So.2d 8 (Ala. 1998), Nationwide never undertook Ms. Bond's defense. This case is neither *Campbell Piping*, 342 So.2d at 770, nor *Rice*, 585 So.2d at 861 (applying *Campbell Piping* rule to equitably estop insurer from withdrawing defense already undertaken).

In *Old Republic*, the Alabama Supreme Court refused to estop an automobile insurer ("Canal") from denying its insured ("Wilson") a defense in the wrongful-death action against him. 718 So.2d at 13 (reversing summary judgment against Canal). After the court found that Canal owed Wilson no contractual duty to defend, a co-defendant's insurer—Old Republic—argued that Canal should nevertheless have been estopped from denying that defense in light of a letter Canal sent Wilson in April 1995. In that letter, Canal told Wilson that it had retained a law firm for

12

purposes of his defense in the wrongful death action. But "[i]n spite of the April 1995 letter," the Alabama Supreme Court found "no basis for applying the rule of . . . *Campbell Piping*." Acknowledging the "indication that an attorney retained by Canal may have entered an appearance on behalf of Wilson," there was still "no indication that any such attorney took an *active role* in the defense." *Id.* (emphasis added). Simply put, Canal never "provided a defense to Wilson," and there thus existed "no basis on which Wilson could invoke" the doctrine. *Id.*

Just as in *Old Republic*, Nationwide never actually provided Ms. Bond's defense. Nationwide merely asked the Longs' counsel to afford Ms. Bond additional time for answering their complaint. Even where Canal retained an attorney on Wilson's behalf, and that attorney actually appeared in the case, the Alabama Supreme Court declined to apply *Campbell Piping* because Canal never "in fact provided a defense" for Wilson. Nationwide did far less here, and it is thus improper—more improper, to be sure, than in *Old Republic*—to equitably estop Nationwide from providing a defense under a contract that plainly excuses their obligation to do so. This Court heeds the instruction in *Old Republic* and declines to apply *Campbell Piping* and its progeny, cases in which the court premised its application of equitable estoppel on the foregone conclusion that the insurers had assumed the responsibilities of defending the insureds in court. In sum, Alabama

13

law's application to this case is clear: Nationwide never assumed control of Ms. Bond's defense and thus is not estopped from denying her that defense.[27]

## IV. CONCLUSION

For the foregoing reasons, Nationwide's motion for judgment on the pleadings (Doc. 42) is **GRANTED in part** and **DENIED in part**.[28] Pursuant to Rule 58 of the Federal Rules of Civil Procedure, a final judgment will be entered separately.

**DONE** this March 30, 2023.

_____
**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE

---

[27] Ms. Bond also alleges that she was prejudiced by reliance upon Nationwide's conduct—namely, in that she incurred a default judgment below. The Court need not address the argument because Nationwide never undertook her defense, but in any event, nothing in this case indicates that Ms. Bond was actually prejudiced. It would make little sense for the parties here to continue litigating Nationwide's duty to defend Ms. Bond below had the default not been set aside. *Cf. Campbell Piping*, *supra* (describing unfairness looming where insured waived lawyer's conflict in reliance on insurer's promise to defend), or *Rice*, *supra* (noting unfairness that would arise from allowing insurer to withdraw defense after 13 months and leave insured with the bill).

[28] This opinion solely concerns Nationwide's duty to Ms. Doris Bond. *See supra* note 3.